In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00396-CV
_____

IN THE INTEREST OF G.J.G.

_____

On Appeal from the County Court at Law No. 3
Montgomery County, Texas
Trial Cause No. 18-11-14466-CV

_____

MEMORANDUM OPINION

Less than two years after they divorced, G.J.G.'s mother filed a petition to modify the joint managing conservatorship provisions in a Final Decree of Divorce (the Decree), which controls her rights of possession and access to her son, whom we shall call *Guy*.[1] Following a trial to the bench, the trial court signed an order denying Mother's petition, and Mother appealed.[2]

---

[1]A pseudonym. *See* Tex. Fam. Code Ann. § 109.002(d).
[2]Father did not appeal.

1

Mother raises two issues in her appeal. In Mother's first issue, she argues the trial court erred in finding that the circumstances of the child, a conservator, or other party affected by the provisions that established Guy's conservatorship have not materially and substantially changed since the trial court signed the Decree on January 4, 2019. In Mother's second issue, she argues the trial court erred when the court sustained an objection to a question that her attorney asked Father about his plans for Guy.[3] We conclude that Mother's first issue lacks merit and that her second issue wasn't properly preserved for our review. For the reasons explained below, we will affirm.

## Background

The trial on Mother's petition to modify occurred in September 2021. In the proceedings that led to this appeal, Mother wasn't the only one who wanted to have the joint custody arrangement that the 2019 Decree created modified. The record shows that Father responded to Mother's petition to modify by filing a counterpetition to modify the Decree. In their respective petitions, both parties asked that the trial court name them as the person with the right to designate Guy's primary

---

[3]*See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

residence. Additionally, Mother asked that the trial court modify several of the custodial provisions in the Decree by awarding her the exclusive right to consent to Guy's medical treatment and make decisions about how he should be educated. Mother also asked that the trial court modify the 2019 Decree to require Father to pay child support. For his part, Father's petition asked that the trial court alter the custodial provisions in the 2019 Decree by giving him the exclusive right to consent to Guy's medical treatment and the exclusive right to decide how Guy should be educated. Father's petition also asked that the trial court modify the Decree by basing the parties' possessory rights on the right in a standard possession order.

Six witnesses testified in the hearing the trial court conducted in September 2021 on Mother's and Father's respective petitions to modify the conservatorship provision in the 2019 Decree: (1) Mother; (2) Father; (3) Sheryl—who taught Guy in kindergarten; (4) Lisa—Guy's teacher at LearningRX, who testified the facility is a "cognitive brain training center" that "works with the underlying reasons for children through adults who struggle with learning comprehending, understanding, the

3

process of information and how that happens in the brain[;]" (5) *John*—Mother's current husband; and (6) *Bob*—Guy's grandfather.[4]

At trial, the evidence Mother elicited from the witnesses focused on Mother's request that the court modify the Decree by giving her the exclusive right to decide how Guy should be educated rather than requiring those decisions to continue to be made jointly with Guy's father. During the trial, Mother argued the trial court should award her the exclusive right to make decisions about Guy's education because she is the parent who is more involved in helping Guy with his homework. According to Mother, she is the parent who follows up and makes sure that Guy gets his homework completed. Mother testified that she thought the Decree needed to be changed "because there is no clear delineation of any type of decision-making regarding [Guy's] education." When her attorney asked her why she thought the current provision requiring the parties to jointly decide how Guy should be educated should be changed, Mother said: "Because I have been an active party in his education."

---

[4]John and Bob are pseudonyms. *See* Tex. Fam. Code Ann. § 109.002(d).

When Mother explained how she had played an active role in Guy's education, Mother testified that around five months before the trial, she had enrolled Guy in a program called LearningRx. Mother explained that she did so because in her opinion "traditional methods were not working through the year." According to Mother, Father felt "indifferent" about the program. Mother explained that Father thought the fact Guy was progressing more slowly than others could be attributed to the fact that he was one of the younger children in his class. Mother testified that she disagreed with Father. Mother described Father's attitude about her decision to enroll Guy in LearningRX, which she explained were extra classes that Guy took in addition to attending kindergarten, as "indifferent." According to Mother, Father "reported that he does not feel it is necessarily helping [guy] or that . . . [Guy] doesn't need to go or that [Guy's] not enjoying going." Still, Mother acknowledged that when Father has possession of Guy, he takes Guy to his sessions at LearningRx.

Lisa, who owns LearningRx, testified that when Mother brings Guy to his appointments, Guy "seems to be very together. He comes in ready to work." In her opinion, Guy has made progress since enrolling in classes

at Learning RX. When she was asked about how Guy acts when Father brings him to class there, Lisa testified that Guy "wants to go play and he wants to talk about everything except what he's there to do." On cross-examination, Lisa agreed that Mother and Father have consistently brought Guy to his appointments at LearningRX, and she said that Guy hasn't had many, if any, absences. Lisa also testified that when Father brings him, Father "is supportive verbally for sure." No one asked Lisa if she knew anything about the terms of Guy's joint conservatorship or whether she thought changing them might affect Guy.

Sheryl, Guy's kindergarten teacher testified that she has "forty-plus years" experience teaching kindergarten. Sheryl said that based on her experience, boys are more prone to progress slower in school, especially in their younger years. According to Sheryl, Guy was one of the youngest students that she had in her class.

When asked about Guy, Sheryl testified that Guy "had some learning difficulties" when she had him as a teacher last year.[5] Sheryl recalled that Guy had some problems remembering letters, with sounds,

---

[5]By the context of Sheryl's testimony, we assume Sheryl was referring to the September 2020-May 2021 school year, but she wasn't specifically asked about the year she had Guy in her class.

reading, and math. According to Sheryl, she talked with Mother and Father several times about Guy's issues. By Sheryl's account, Mother and Father were both receptive and active in Guy's education. Sheryl testified that Father attended most of Guy's school events and conferences. And Sheryl said that Father was just as active as Mother in Guy's education. As Sheryl saw it, Sheryl testified that Mother and Father both wanted what was in Guy's best interest.

Mother's attorney asked Sheryl whether she knew that Mother had enrolled Guy at LearningRX. Sheryl testified that she was aware Mother had enrolled Guy there. According to Sheryl, Guy's reading skills didn't improve after he was enrolled in classes at LearningRX. But Sheryl agreed that she noticed that by the end of the school year, Guy could count to a hundred.

When Mother testified, she said the reason she thought the existing conservatorship order needed to be changed was because "there is no clear delineation of any type of decision-making regarding Guy's education." According to Mother, when Guy was with her, she helped him with his homework on a more consistent basis compared to Father. She testified: "I was consistent with doing them and there was a consistency

where they were not done during [Father's] time." Mother also testified that she wanted Guy vaccinated against COVID-19, while Father was against having Guy take the vaccine. Mother also complained that Father failed to enroll Guy in any extracurricular activities, while she had taken the initiative to enroll Guy in a program for summer camp.

Even though Mother criticized Father, Mother conceded that Guy loves Father and enjoys being with him. Yet Mother would not concede that she and Father are equally good parents. But on cross-examination, she agreed that Father is active in Guy's life and provides Guy a safe and stable home. She also conceded that Father attended most of the parent-teacher conferences that occurred at Guy's school. She also agreed that Father offered to have Guy psychologically tested. But according to Mother, Guy's problem is "an educational problem," not "a psychological issue."

Father's attorney brought out the fact that since Mother and Father divorced, Mother has remarried, and she has had arguments with her current spouse. On cross-examination, Mother conceded that after her divorce from Father she remarried, and since remarrying she has called Father twice late at night and asked Father to pick her up from her house

after she and her spouse have argued. According to Mother, she called Father because it was "where I felt the safest place to be at that time where I could go and just not have to deal with an argument." Mother also admitted that her spouse has been gone from home for about a month but that now he is "back home to his parents' house or his mom's house in Dallas."

When Father testified, he explained that he planned for Guy to continue to go to school, to continue to take the extra classes at Learning RX, and to continue with his extracurricular activities. During the upcoming year, Father said that he had plans to take Guy camping, to the beach, to take him fishing, and to take Guy to car shows. Father testified that his plans for Guy included other outdoor activities too.

As to Father's involvement in Guy's education, Father testified that in the past year he attended Guy's graduation from kindergarten. Father also testified that he had attended several parent-teacher events. According to Father, he was "very involved" when Guy was in kindergarten, and he is now involved with Guy in first grade. Father explained that he has no plans to enroll Guy in a different school, and that he personally has no plans to move or relocate. Father testified that

when Guy is with him and they are home, he spends time with Guy using educational aids like triangles, squares, money, and flash cards.

Father testified that he wanted Guy to be "tested for other focus-oriented, you know, behaviors and disabilities." In January 2021, Father explained that he met with healthcare professionals at a health and wellness treatment center to learn about an evaluation for children who have disabilities. Father said he made the appointment with the treatment center after Guy's kindergarten teacher called him and discussed her concerns about Guy's progress in kindergarten. Father explained that he didn't know whether Guy's school had recommended that Guy be tested for disabilities.

Father confirmed that in February 2021, he picked Mother up from her house after Mother had called and said that she and her husband had argued. According to Father, "the general consensus of it was that she was in duress." Father testified Mother was "anxious" but she was quiet and didn't say what was wrong when he took her to his home. Father also testified that Mother also called him several times one evening in July 2021 and told him that she was arguing with her spouse. When asked if he had concerns about the stability of Mother's home, Father responded,

"Absolutely." Even so, Father testified that he believes Mother is a "good mom."

When John (Mother's husband) testified in the trial, he admitted that he and Mother had on occasion argued. John explained that on at least one or two of those occasions, Mother left the house to "de-escalate the situation." John said that during the pandemic he lost his job, so he moved out of the house "for his mental health" because he "felt like [he] was letting the family down." Yet John testified that once he got a job, he "came back and we've been a happy family since then."

Bob (Guy's grandfather) testified that typically, he sees Guy once a month. Bob described Mother (his daughter) as a loving and kind parent who wants "to make sure that he gets the best that he can."

When the hearing ended, the trial court denied Mother's petition and Father's counterpetition to modify the parent-child relationship. At Mother's request, the trial court filed Findings of Fact and Conclusions of Law. In its findings of facts and conclusions of law, the trial court found:

> [T]he circumstances of the child, a conservator, or other party affected by the Decree of Divorce have not materially and substantially changed since the date of the rendition of [conservatorship provision in the 2019 Decree]. The Court

11

also did not find that modifying the Decree of Divorce was in the child's best interest.

## Standard of Review

We use an abuse of discretion standard to review a ruling challenging an order establishing a joint managing conservatorship.[6] A trial court abuses its discretion if it acts arbitrarily or without reference to any guiding rules or principles.[7] "In determining whether a trial court abused its discretion, we view the evidence in the light most favorable to the trial court's decision and indulge every legal presumption in favor of the judgment."[8] We will reverse the trial court's judgment only when it appears from the record as a whole that the trial court has abused its discretion.[9]

"The trial court is given wide latitude in determining the best interest of a minor child."[10] "The question of conservatorship of a child is

---

[6]*In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).

[7]*Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *In the Interest of M.A.M.*, 346 S.W.3d 10, 13 (Tex. App.—Dallas 2011, pet. denied).

[8]*See In re W.J.B.*, 294 S.W.3d 873, 878 (Tex. App.—Beaumont 2009, no pet.) (cleaned up).

[9]*See In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021).

[10]*Gillespie*, 644. S.W.2d at 451.

left to the sound discretion of the trial court when it sits as trier of fact."[11] "The trial court is in the best position to observe the demeanor and personalities of the witnesses and can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record."[12] Therefore, as the factfinder the trial court may "reject the uncontroverted testimony of an interested witness unless it is readily controvertible, it is clear, positive, direct, and there are no circumstances tending to discredit or impeach it."[13] Finally, when the evidence admitted in the trial conflicts, the reviewing court must presume the factfinder resolved the inconsistencies in a way that favors the prevailing party, and the reviewing court must disregard the conflicting evidence when conducting its legal sufficiency review.[14]

"In family law cases, the traditional sufficiency standard of review overlaps with the abuse of discretion standard; thus, legal and factual sufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court had sufficient evidence to exercise its

---

[11]*Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.).
[12]*Id.*
[13]*In re Jane Doe 4*, 19 S.W.3d 322, 325 (Tex. 2000).
[14]*See City of Keller v. Wilson*, 168 S.W.3d 892, 822 (Tex. 2005).

discretion."[15] "This standard has been distilled into a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion."[16] The second part of the inquiry requires the reviewing court to determine whether the trial court made a reasonable decision after considering the evidence presented.[17]

## Analysis

### *The Petition to Modify Guy's Conservatorship*

In Mother's first issue, she argues the trial court erred in finding that the circumstances of the child, a conservator, or other party affected by the conservatorship orders, which the trial court included in the 2019 Decree, have not materially and substantially changed since the trial court signed the Decree. To obtain a modification of the terms and conditions of the terms of Guy's joint managing conservatorship, Mother needed to secure findings that:

---

[15]*In re E.R.A.*, No. 09-20-00042-CV, 2021 Tex. App. LEXIS 2026, at *11-12 (Tex. App.—Beaumont 2021, no pet.) (mem. op.); *In re R.H.C.*, No. 09-15-00429-CV, 2016 Tex. App. LEXIS 11388, at *12 (Tex. App.—Beaumont Oct. 20, 2016, no pet.).

[16]*In the Interest of M.A.M.*, 346 S.W.3d at 13; *see also In re E.R.A.*, 2021 Tex. App. LEXIS 2026, at *11-12.

[17]*In re E.R.A.*, 2021 Tex. App. LEXIS 2026, at *12.

(1)     A decision modifying the prior conservatorship orders in the 2019 Decree is in the best interest of the child.

(2)     The circumstances of the child, a conservator, or other party affected by the previous order have materially and substantially changed since the trial court rendered the conservatorship orders in the 2019 Decree.[18]

According to Mother, the evidence before the trial court establishes that the 2019 conservatorship orders had become unworkable or inappropriate. Mother argues that she presented "more than enough" evidence for the trial court to have named her as Guy's "primary conservator." But we note that Mother's standard misstates what she must establish to prevail, as she must show the trial court didn't have sufficient information to exercise its discretion and that it erred in exercising its discretion by choosing not to modify the conservatorship provisions in the 2019 Decree.

We turn first to Mother's argument that the trial court erred in failing to find "the circumstances of the child, a conservator, or other party affected by the Decree of Divorce have not materially and substantially changed since the date of the rendition of that order." According to Mother, because Mother and Father both filed petitions

---

[18]*See* Tex. Fam. Code Ann. § 156.101(a) (Grounds for Modification of Order Establishing Conservatorship, or Possession and Access).

claiming that a material and substantial change in circumstances had occurred since the trial court signed the 2019 Decree, the allegations in their petitions were binding on the trial court as judicial admissions. As judicial admissions, Mother argues the trial court was bound to find that a material and substantial change in Guy's circumstances had occurred after January 4, 2019, the day the trial court signed the 2019 Decree.

We acknowledge that pleadings may sometimes operate as judicial admissions and be binding on the parties as judicial admissions as to the facts that the pleadings admit. For example, in two family-law cases, *In re D.E.T.* and *In the Interest of A.E.M.*, we held that the parties' respective petitions and counter-petitions to modify the conservatorship orders operated as judicial admissions and held the judicial admissions in the pleadings supported the rulings of those trial courts to modify the conservatorship orders that were at issue in those appeals.[19] Yet in those cases—unlike what occurred here—the trial courts in *D.E.T.* and *A.E.M.* found in each case that a material or substantial change had occurred

---

[19] *In re D.E.T.*, No. 09-22-00197-CV, 2023 WL 4940623, at \*7 (Tex. App.—Beaumont Aug. 3, 2023, no pet. h.) (mem. op.); *In the Interest of A.E.M.*, No. 09-18-00288-CV, 2020 WL 826715, at \*10 (Tex. App.—Beaumont Feb. 20, 2020, no pet.).

since the trial court had signed its prior conservatorship order.[20] Here, the trial court found against both parties' claims when it found that **no** material change had occurred.

Thus, while the trial court's finding here is inconsistent with the parties' cross pleadings, it is the trial court who must decide whether the parties have shown a substantial and material change in circumstances had occurred and that a modification is in the best interest of the child. That said, the rules of error preservation required that Mother, as the party who intended to rely on the judicially admitted fact, to comply with the rules of error preservation to avoid waiving the admission to rely on any judicially admitted facts in the partis' pleadings.[21] The problem of error preservation wasn't an issue that was presented to us in *D.E.T.* or *A.E.M.*[22]

---

[20]*Id.*

[21]*See Marshall v. Vise,* 767 S.W.2d 699, 700 (Tex. 1989) (holding that "a party waives the right to rely upon an opponent's deemed admissions unless an objection is made to the introduction of evidence contrary to those admissions"); *see also Houston First Am. Sav. v. Musick,* 650 S.W.2d 764, 769 (Tex. 1983); *Restelle v. Williford,* 364 S.W.2d 444, 446 (Tex. Civ. App.—Beaumont 1963, writ ref'd n.r.e.); Tex. R. App. P. 33.1.

[22]*Id.*

Under Texas law, a judicial admission is a formal waiver of proof, which dispenses with the production of evidence on an issue and bars the admitting party from disputing it.[23] Admissions in trial pleadings are regarded as judicial admissions, judicially admitted facts require no proof, and a party may not introduce evidence that contradicts a judicially admitted fact.[24] Even so, "a party relying upon an opponent's pleadings as judicial admissions of fact must protect the record by objecting to the introduction of controverting evidence and to the submission of any issue bearing on the facts admitted."[25]

On appeal, Mother's sole argument is that, because the parties judicially admitted in their pleadings that a material and substantial change in Guy's circumstances had occurred, the trial court abused its discretion in finding that a material and substantial change had **not** occurred.[26] The record shows that Mother didn't object to the evidence

---

[23]*Blair v. Blair*, 642 S.W.3d 150, 159 (Tex. App.—El Paso 2021, no pet.).

[24]*See In re D.E.T.*, 2023 WL 4940623, at *7.

[25]*Marshall*, 767 S.W.2d at 700; *see also Houston First Am. Sav.,* 650 S.W.2d at 769; *Restelle*, 364 S.W.2d at 446.

[26]We note that Mother might have argued that other circumstances of the child had changed since January 2019. For example, she could have argued: (1) that she remarried, separated, and reunited with Guy's stepfather; (2) that she and Father enrolled Guy in classes at Learning

that the trial court relied on in finding that the circumstances of the child, a conservator, or other party affected by the Decree had not materially and substantially changed since January 2019. On the contrary, the reporter's record shows that Mother's attorney elicited much of the evidence that the circumstances of their joint management conservatorship had not materially or substantially changed since January 2019. The evidence presented in the trial shows that in November and December 2020, when Mother and Father filed the respective petitions seeking to modify the parent-child relationship, they were jointly managing Guy under the terms and conditions of the trial court's January 2019 Decree. During the trial, Mother testified that she and Father each had Guy on alternating weeks and lived around "a 30-minute drive one way." Yet no evidence shows the alternating week schedule or the length of the drive changed between January 2019 and

---

Rx; and (3) that she and Father couldn't agree on whether Guy should receive a COVID-19 vaccine when and if the vaccine were approved for children of Guy's age. That said, the Texas Supreme Court has repeatedly cautioned courts of appeals against addressing unassigned error. For that reason, we will not address an argument that is neither raised nor briefed. *See, e.g., Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998); *Allright, Inc. v. Pearson*, 735 S.W.2d 240 (Tex. 1987); *see also* Tex. R. App. P. 38.1(i).

the trial. When Mother was asked why she thought the conservatorship order should be changed, she testified that she wanted to be named Guy's primary custodian because there isn't a "clear delineation of any type of decision-making regarding [Guy's] education." She said she wanted that role because she took a more active role than Father in Guy's education.

The evidence about whether Mother was a more active parent than Father also conflicted. Father testified about the active role he played in Guy's education and described the many parent-teacher conferences he had attended at Guy's school. And even though Mother testified that Father never helped Guy with his homework, Guy's kindergarten teacher testified that there were never any issues with Guy getting his homework done regardless of which parent dropped him off at school.

When deciding whether to modify a prior conservatorship order, a trial court doesn't abuse its discretion "if its order is supported by some evidence of a substantive and probative character."[27] By failing to object to the evidence showing Guy's circumstances had **not** materially and substantially changed in the hearing, we hold that Mother waived her

---

[27]*In re A.E.D.*, No. 09-13-00555-CV, 2014 Tex. App. LEXIS 10587, at *7 (Tex. App.—Beaumont Sept. 4, 2014, pet. denied).

claim that the trial court erred in failing to find that a substantial and material change had occurred based on a judicial admission in the parties' pleadings that Mother waived.[28]

And even had Mother not waived her claim that the trial court was bound to find that a material and substantial change had occurred based on the parties' pleadings, Mother would still be required to demonstrate that the trial court erred in finding that she failed to prove that modifying the conservatorship provisions in the Decree would be in Guy's best interest.[29] According to Mother, the trial court abused its discretion by not naming her as Guy's primary conservator because the evidence "was legally and factually sufficient to support that it was in the child's best interest to give [her] the right to determine the primary residence of the child and decision-making rights."

As the parent seeking to modify the conservatorship provision in the 2019 Decree, Mother had "the burden to establish by a preponderance of the evidence that the modification would be in the best interest of the

---

[28]*See Marshall*, 767 S.W.2d at 700; Tex. R. App. P. 33.1.
[29]Tex. Fam. Code Ann. § 156.101(a).

21

child."[30] However, the trial court's findings of fact state that the trial court "did not find that modifying the Decree of Divorce was in the child's best interest." On appeal, Mother argues the trial court had "more than enough" evidence "to have determined that modification would be in the best interest of the child[.]" To support that argument, Mother points to her testimony describing what she characterizes as the lead role she took in educating Guy when comparing her role to that of the role she claims Father played, which Mother characterized in her brief as seemingly "indifferent."

The trial court heard conflicting evidence about the factors relevant to conservatorship, possession, and access—the *Holley* factors.[31] The evidence admitted in the hearing didn't address all the relevant *Holley* factors; instead, it focused on the parenting skills of the parties, their plans for the child, the stability of Mother's and Father's homes, and the existing parent-child relationship that Guy has with his parents.

The question for a reviewing court is whether the trial court had sufficient evidence upon which to exercise its discretion and whether the

[30]*Id.*; *see In the Interest of J.G.M.*, No. 09-11-00368-CV, 2012 Tex. App. LEXIS 4300, at *2 (Tex. App.—Beaumont May 31, 2012, no pet.).
[31]*Holley*, 544 S.W.2d at 371-72.

trial court erred in the application of its discretion.[32] From the evidence, the trial court could have reasonably concluded that Guy's parents both take active roles in parenting Guy, have a good relationship with him, and provide Guy with a safe and stable home. We conclude Mother failed to meet her burden to prove that changing the terms of Guy's joint-managing conservatorship, as established by the 2019 Decree, is in Guy's best interest.

Consequently, we hold the trial court did not abuse its discretion by denying Mother's petition to modify the 2019 Decree.[33] We overrule Mother's first issue.

*Evidence of Future Plans*

In issue two, Mother argues that the trial court "erred by not allowing [her attorney] to ask questions of [Father] that were related to [the] Holley Factors." To support her claim, Mother relies on the trial court's ruling sustaining the following objections to two questions that Mother's attorney asked when examining Father:

> Mother's Attorney: As far as plans go, what kind of plans do you have for [Guy]?

---

[32]*In re E.R.A.*, 2021 Tex. App. LEXIS 2026, at *11-12.
[33]*See Gillespie,* 644 S.W.2d at 451.

Father's Attorney: Objection; vague.

Trial Court: Sustained.

Mother's Attorney: What do you want [Guy] to be when he grows up?

Father's Attorney: Objection; relevance.

Trial Court: Sustained. Is he 6 or 7?

Mother's Attorney: Well, I – I thought the plans for the child were relevant in a custody case.

Trial Court: Well, maybe in the next couple of weeks but not when he – not when he's 18 or 20.

After the trial court indicated the questions were relevant but that the questions should be tied to Guy's more immediate future, Mother's attorney questioned Father about his plans for Guy during the next school year. There were no objections to these questions, and Mother's attorney didn't try to question Father about his plans for Guy in the next two, three, four, or five years. Nonetheless, Mother argues that because the two questions the trial court prevented her attorney from asking Father were about a *Holley* Factor, the questions "cannot be found to be irrelevant when it comes to determining the best interest of the child[.]"

We review a trial court's ruling admitting or excluding evidence under an abuse of discretion standard.[34] Here, we agree with the general proposition that evidence about a parent's plans for a child is relevant to a court's decision about whether a party's proposal to modify the terms of a court-ordered conservatorship is likely to serve the child's best interest.[35] Even so, relevant evidence may still be excluded by a trial court if the trial court decides it is needlessly cumulative of other evidence admitted in the trial.[36]

We need not decide whether the trial court erred in sustaining objections to the two questions that are at issue here, however, because we don't know what Father would have said had he answered the questions. To preserve error when a court excludes evidence, the Rules of Evidence require the party to "inform the court of its substance by an offer of proof, unless the substance was apparent from its context."[37] What a witness would have said in response to a question is important to the appellate court's analysis of whether the appellant was harmed since

---

[34] *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005).
[35] *See Holley*, 544 S.W.2d at 372.
[36] *See* Tex. R. Evid. 403.
[37] *Id.* 103(a)(2).

the party that appeals from a trial court's judgment must demonstrate that the trial court's "error probably caused the rendition of an improper judgment[.]"[38]

After the trial court sustained the objection of Father's attorney to the questions about Father's plans for Guy, Mother's attorney never made an offer of proof, an offer that would have informed the trial court (and this Court) of the substance of what Mother claims Father would have said had he been required to answer. We can't now know whether Father's answers might have been cumulative of the answers later provided when asked about his plans for Guy in the upcoming year. We also can't now know whether if Father had answered, his answers would have been material to the decision the trial court made in denying Mother's petition. Thus, Mother can't demonstrate that the error probably caused the rendition of an improper judgment.[39] We hold that by failing to make an offer of proof, Mother failed to preserve the

---

[38]Tex. R. App. P. 44.1(a)(1).
[39]*Id.*

complaint she raised in her second issue for our review in her appeal.[40]

We overrule Mother's second issue.

Conclusion

Having overruled Mother's issues, the judgment of the trial court is

AFFIRMED.

HOLLIS HORTON<br>Justice

Submitted on August 21, 2023
Opinion Delivered December 21, 2023

Before Horton, Johnson and Wright, JJ.

---

[40]*See Gunn v. McCoy*, 554 S.W.3d 645, 666 (Tex. 2018) ("If a court ruling excludes evidence, a party must preserve error by filing an offer of proof informing the court of the substance of the excluded evidence.").